**Frank BUCKLEY, Jr., Plaintiff,**

v.

**AIRSHIELD CORPORATION, et al., Defendants.**

No. CIV.A. AW–95–1481.

United States District Court, D. Maryland.

Oct. 13, 2000.

---

Raphael V. Lupo, Melise R. Blakeslee, Christopher Kliefoth, Laura Eversole, McDermott, Will & Emery, Washington, DC, for Plaintiff.

Louis J. Kozlakowski, Mercantile Bank & Trust, Baltimore, MD, Dennis L. Thomte, Zarley, McKee, Thomte, Vorhees, et al., Omaha, NE, for Defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Currently pending before the Court is (1) Defendant's Motion to Exclude the Testimony of Expert, Gino Sovran [194–1]; (2) Plaintiff's Motion to Limit or Exclude the Testimony of Defendant's Technical Expert, William Mason [205–1]; (3) Plaintiff's Motion to Exclude the Testimony of Expert, Thomas F. Smegal, Jr. [207–1]; (4) Defendant's Motion to Strike Plaintiff's Exhibits filed in support of Plaintiff's Motion for Summary Judgment [197–1]; (5) Plaintiff's Motions for Claim Interpretation [196–1] and Partial Summary Judgment on 28 of 30 Admitted Infringements [196–2]; and (6) Defendants' Motion for Summary Judgment for Non-infringement [195–1].

The motions have been fully briefed by all parties. On October 6, 2000, the Court held a hearing on the pending motions to which the parties argued their respective positions. Upon consideration of the arguments made in support of, and opposition to, the respective motions, the Court makes the following determinations.

## FACTUAL BACKGROUND

This five-year patent infringement case between the inventor, Frank Buckley, and Airshield Corporation, a former licensee surrounds U.S. Patent 4,245,862 ("the Buckley Patent"). The Buckley Patent is for a "DRAG REDUCER FOR LAND VEHICLES." Essentially, it is a device that helps reduce air drag through an aerodynamic design. The device is mounted on the roof of a cab of a load-carrying vehicle (mostly trucks). The device can be used for either a single chassis or a traditional tractor-trailer vehicle. The invention was developed under a National Science Foundation grant while Dr. Buckley was an employee at the University of Maryland. Dr. Buckley had two patent applications that were rejected by the U.S. Patent Office, before his third one—the Buckley Patent in this case—was issued. This patent has been the subject of prior litigation with other inventions (including in one prior case in which Dr. Buckley and Airshield Corp. were co-plaintiffs hereinafter referred to as the *Pulse* case).

## DISCUSSION

I. *Defendant's Motion to Exclude Gino Sovran from Testifying as an Expert Witness*

Defendants seek to exclude Plaintiff's expert witness, Dr. Gino Sorvan on the following grounds: (1) Dr. Sorvan Dino is unqualified because he is unfamiliar with certain patent law terminology, such as "the doctrine of equivalents" and (2) Dr.

Sorvino's testimony lacks a reliable foundation, mostly because he spent only one hour reviewing the patent file history, and failed to study any prior art.

■ First, as for his qualifications, Dr. Sorvan has a Ph.D. in Mechanical Engineering and 40 years experience as a supervisor of fluid mechanics with General Motors Research Laboratories. Dr. Sorvan has experience directly on the relevant technology: fluid dynamics associated with road-vehicle aerodynamics and computational fluid dynamics. The fact that Dr. Sorvan's unfamiliar with patent law terms is really irrelevant, since he's testifying as an expert on the technology, and not the law. The Federal Circuit has commented directly on this point:

> It is of course nonsense to contend that only lawyers or patent lawyers can be expert witnesses in a patent suit. Indeed, this Court has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide.

See *Endress + Hauser, Inc. v. Hawk Measurement Sytems Pty., Ltd.,* 122 F.3d 1040, 1042 (Fed.Cir.1997) (emphasis added). In fact, one of Defendant's own witnesses, Mr. Mason, himself was not well-versed on the phrase "doctrine of equivalents" in his deposition.[1]

■ Second, as for the foundation for his opinions, the Court believe Defendants mischaracterize the alleged "one hour of review of the patent file history." The entire portion of the prosecution history consisted of only two pages long. As for the allegation that Dr. Sovran "didn't study any prior art" (i.e. the prior inven-

tions in the field), the prior art is not central to determination of this case, because the validity of the patent has already been resolved. The main issue is whether Dr. Buckley's claim has been infringed. The Court finds that whether Dr. Sovran's unfamiliarity with prior art undermines his testimony, goes to the weight of his testimony, and not its admissibility. Therefore, the Court denies Defendant's motion to exclude the testimony of Dr. Sovran.

II. *Plaintiff's Motion to Limit the Testimony of Defendants' Technical Expert, William T. Mason, Jr., Or, Alternatively, to Exclude Him from Testifying Altogether*

■ In support of his motion, Plaintiff argues that Mr. Mason is not rendering expert testimony. Plaintiff contends that Mr. Mason's opinions are not based on specialized knowledge helpful to a jury, and his factual interpretations are so obvious and straightforward, that it really is lay testimony. Accordingly, Plaintiff contends that Mr. Mason should be excluded from testifying

The Court believes that Plaintiff's arguments are premature at this point. The district court performs a "gatekeeping function" to exclude expert testimony which is not reliable, and which is not specialized and invades the province of the jury. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Court recognizes that Mr. Mason's deposition reveals some concerns. For example, Mr. Mason admitted that he did not actually write the expert report that was filed on his behalf. Also, Mr. Mason appears to have relied heavily on representations made to him by

---

**1.** For example, in the deposition, Mr. Mason testified:

> A: *You know, the phrase "doctrine of equivalents" doesn't do much for me,* as much a I try to—you know, the material that's described in the last three of four sentences [of the expert report], the idea of not encompassing subject matter existing in prior art and trivial

> variations of prior art. That I understand.
> Q: And from where do you gain that understanding?
> A: I think it's somewhat intuitive and logical, and I can only assume that through past—whatever you call it—legal history or whatever, that that's been established in some legal sense.

Defendant's counsel, Mr. Thomke. For example, Plaintiff admitted as follows:

Q: So who told you that if the '862 patent is construed to include top release angles greater than approximately 18 degrees, the fairing would encompass the subject matter disclosed in the prior art?

Nevertheless, the Court finds that Mr. Mason is qualified to render an opinion, his testimony would be useful for background and foundation purposes, and rests upon a reliable foundation. Accordingly, the Court denies Plaintiff's motion to exclude his testimony.

### III. Plaintiff's Motion to Exclude Thomas F. Smegal, Jr. Esq. From Testifying as an Expert Witness

■ Plaintiff asserts two grounds for excluding the testimony of Thomas Smegal: (1) Mr. Smegal is not qualified to give expert testimony because he is neither a technical expert nor a person of ordinary skill in the relevant art and (2) his testimony lacks a reliable foundation because he failed to interpret Claim 1 with the view of one skilled in the relevant art. First, Plaintiff argues that, by his own admission, Mr. Smegal's sole basis for qualification is his experience as a patent attorney. Plaintiff maintains that, absent a technical background to support his opinion, Mr. Smegal is testifying as to legal conclusions predicated upon information provided by Defendants. Plaintiff argues that such testimony is not helpful to the trier of fact.

A review of Smegal's qualifications in his expert report reveals that he has practiced patent law for over 37 years and has testified as an expert on issues of patent infringement and validity in over 300 cases. Defendants do not dispute that Smegal's qualifications are based upon his experience as a patent lawyer. Instead, Defendants argue that Smegal's testimony is appropriate because he is testifying as an expert in the field of patent law. Defendants maintain that Smegal's testimony rests on the reliable foundation of the prosecution history. "[S]ince claim construction is a question of law, testimony of a patent expert as to claims' interpretations is merely a legal opinion entitled to no deference by the court." *Brunswick Corp. v. United States,* 34 Fed.Cl. 532 (1995). A court may exclude the testimony of a patent law expert primarily entailing the opinion as to legal issues in the case or patent law generally. *Ely v. Manbeck,* 17 U.S.P.Q.2d 1252, 1254 (D.D.C. 1990). The Court believes that Smegal intends to testify exclusively as an expert in patent law. Unlike Mason, Smegal does not advance that he holds any technical expertise. The proffered testimony centers on the application of the prosecution history to the interpretation of Claim 1 and explaining that Defendants' fairings do not literally infringe upon the Buckley patent as shown in Defendant's Exhibit 2. The Court finds that this information does not appear to clarify the language of the claim with the view of one skilled in the art. Further, the Court finds that Mr. Smegal's testimony appears to do no more that reiterate Defendants' legal arguments in their briefs and explain the obvious meaning of Exhibit 2. Still, it is within this Court's complete discretion to allow Smegal's testimony. The Court will allow Mr. Smegal to testify to relevant background information on the procedures for prosecuting a patent, but his testimony, if offered, shall not include the rendering of legal opinions on claim construction and infringement in this case. Further, before offering Mr. Smegal's testimony, Defendants must seek this Court's approval and make a profer to the Court as to the matters to be testified on. Therefore, the Court grants in part and denies in part Plaintiff's motion to exclude Mr. Smegal's testimony.

### IV. Defendants' Motion to Strike Plaintiff's Exhibits 1, 4, 5, 6, 7, and 10

Defendants argue that the evidence from the *Pulse* case constitutes extrinsic evidence that may not be used to interpret Claim 1. Defendants maintain that Defendants' Press Release (Exhibit 1); the affidavit of Plaintiff submitted by Defendants in the *Pulse* case (Exhibit 4); the tran-

scripts from the *Pulse* case (Exhibits 5 and 7); and a copy of an exhibit used by Defendants in the *Pulse* case (Exhibit 6) are not proper forms of extrinsic evidence that may be used by the Court in interpreting Claim 1. Defendants argue that the answers to interrogatories in Exhibit 10 should be excluded because the document is not proffered by an expert in the art or probative on the issue of claim interpretation. Additionally, Defendants allege that Plaintiff is seeking to introduce his own expert testimony in contravention to this Court's Order denying his request to testify as an expert in the instant action. Mem. Op. June 2, 2000.

In opposition, Plaintiff admits that the exhibits are extrinsic evidence. Plaintiff explains that the testimony and exhibits from the *Pulse* are admissible extrinsic evidence to which the Court may use if the available intrinsic evidence is insufficient to support a claim interpretation. Plaintiff also counters that the Court's prior opinion preventing Plaintiff from testifying as an expert did not preclude the introduction of evidence showing Defendants' prior adoption of Plaintiff's interpretation.

■ In addressing a request for claim interpretation, the court must first examine the language of the claim itself, the patent specification, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed.Cir.1995). Where these intrinsic devices are insufficient to clarify the meaning of a claim, the court may seek extrinsic evidence, such as "expert and inventor testimony, dictionaries, and learned treatises" to aid in its interpretation. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980–981 (Fed.Cir. 1995). However, such extrinsic evidence may not contradict the plain language of the claim itself. *Id.* Thus, the language of the claim, the written description, and the prosecution history should be the preliminary sources to support the court's claim interpretation.

■ Nevertheless, courts are not categorically prohibited from examining extrinsic evidence, even when the patent document is itself clear. *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1308 (Fed.Cir.1999). Rather, courts should "not to rely on extrinsic evidence in claim construction to contradict the meaning of claims discernible from thoughtful examination of the claims, the written description, and the prosecution history—the intrinsic evidence." *Id.* A court may consider extrinsic evidence to ensure that its interpretation of the claim language is not in contravention to "clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." *Pitney Bowes, Inc.*, 182 F.3d at 1309. Thus, to the extent that the extrinsic evidence facilitates a complete understanding of the meaning of Claim 1 as gathered from the intrinsic evidence, Plaintiff's Exhibits 1, 4, 5, 6, and 7 may be used to interpret Claim 1. *See id.*

■ Yet, the admissibility of Plaintiff's Exhibits 1, 4, 5, 6, and 7 are still subject to the Federal Rules of Evidence. Given that Defendants do not dispute its authenticity, the Defendants' own press release qualifies as an express admission as to its subject matter. As to the other exhibits, Plaintiff maintains that Defendants' prior adoption of Plaintiff's interpretation in a prior proceeding should be imputed to the current proceeding. Plaintiff contends that, in eliciting and offering his expert testimony in the *Pulse* case, Defendants adopted his interpretation of Claim 1. Essentially, Plaintiff is seeking to impute his own answers to the questions of Defendants' counsel to the Defendants in the present action. As the proponent, the burden is on the Plaintiff to establish that Defendants intended to adopt his expert testimony in the prior proceeding.

■ Under Fed.R.Evid. 801(d)(2)(B), the statement of another may be offered against a party in interest "of which that party has manifested an adoption or belief in its truth" as an adoptive admission. A

statement may be offered as an adoptive admission if it is shown that the statement was made under circumstances that would induce a reasonable person to respond and the person against whom it is sought to be used against heard, understood, and acquiesced in the statement. *See Neuman v. Rivers,* 125 F.3d 315, 320 (6th Cir.1997); *United States v. Jinadu,* 98 F.3d 239 (6th Cir.1996) (adoptive admission of agent's questions by criminal defendant in saying "yes" to inquiry of agent); *United States v. Morgan,* 581 F.2d 933, 937 (D.C.Cir. 1978) (finding adoptive admission where party approved and submitted affidavit to magistrate). Particular to the case at hand, McCormick indicates that "when the proponent placed the witness on the stand to prove a particular fact and the witness so testified, the party has created an adoptive admission of the fact that may be admitted in a later suit" 2 John W. Strong, *McCormick on Evidence* § 261 (5th ed.1999); see *Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349, 1355–1356 (5th Cir.1983). In *Fox,* the plaintiff called an expert witness to testify on the issue of damages. 694 F.2d at 1354. The expert's testimony was based upon the assumption that the plaintiff did not qualify for the protections of the Jones Act. *Id.* at 1355. The Fifth Circuit held that the expert's testimony constituted an adoptive admission of the plaintiff that he was not covered by the Jones Act. *Id.* The court found that the adverse assumption was not only based upon information supplied by the plaintiff's counsel, but also amounted to a "central and explicit theme" of the expert's detailed testimony. *Id.* The court concluded that the failure of the plaintiff's counsel to challenge the expert's conclusions after eliciting his testimony supported a finding that the plaintiff adopted the expert's adverse statements. *Id.* at 1356.

In the *Pulse* case, Defendants not only submitted an affidavit from Plaintiff (Exhibit 4) espousing Plaintiff's interpretation of the claim, but also elicited his expert testimony explaining the operation of his invention in order to support its prior infringement action (Exhibits 5 and 7). In testifying on Defendants' behalf, Plaintiff explicitly stated his interpretation of the claim as involving optimized values, the use of his formula in determining infringement, and the appropriate gap distance. Defendants offered Plaintiff's affidavits, testimony, and infringement prediction sheet to prove that another fairing infringed the Buckley patent. The record reveals that Defendants' counsel made no effort to disavow the information or that the interpretation came as a surprise.

"In view of the prevailing practice of interviewing one's witnesses before putting them on the stand, it would seem that a practical working rule would admit against the proponent the direct testimony of its own witness as presumptively elicited to prove the facts stated, in the absence of counter proof that the testimony came as a surprise to the interrogator or was repudiated in the course of argument."

2 John W. Strong, *McCormick on Evidence* § 261 (5th ed.1999). Thus, the testimony and exhibits offered by Defendants in the *Pulse* case should be admissible as adoptive admissions. Accordingly, the Court denies Defendants' Motion to Strike Plaintiff's Exhibits 1, 4, 5, 6, and 7. As to Exhibit 10, Plaintiff is not offering the interrogatories to support his claim interpretation, but to establish literal infringement to which the extrinsic evidence bar does not apply. Therefore, Defendant's motion to strike Exhibit 10 is denied.

## V. *Plaintiff's Motion for Claim Interpretation*

Plaintiff requests the Court to interpret two provisions of Claim 1. The relevant portion of Claim 1 states:

"said top portion having at least a substantially horizontal segment a tangential plane of which is inclined with respect to the horizontal at an angle which is less than or equal to approximately $\tan^{-1}$ [2(H-h)/x] and greater than or equal to zero, where H represents the vertical distance from the roof of the cab

portion to the top of the front wall of a van portion for which the drag reduction performance of said fairing is optimized, h represents the height of said fairing, × represents the distance between the rear portion of said fairing and the front of said van portion, and h has a value which is greater than or equal to about 0.9H and less than or equal to about H...."

First, Plaintiff advances that the provision "said top portion having at least a substantially horizontal segment a tangential plane of which is inclined with respect to the horizontal at an angle which is less than or equal to approximately $\tan^{-1} [2(H-h)/x]$ and greater than or equal to zero" incorporates the following interpretations:

1. H, defined in Claim 1, to represent the vertical distance from the roof of the cab portion to the top of the front wall of a van portion for which the drag reduction performance of said fairing is optimized, is *not* necessarily the vertical distance from the roof of the cab portion to the top of the front wall of an *actual* trailer.

2. H for an existing fairing designed for attachment to a particular cab can be calculated using the equation $H = h + (x/2)\tan o$.

3. the appropriate gap distance (x) in the formula should equal thirty (30).

A. *The Value of H as defined in Claim 1*

▮▮▮ First, Plaintiff alleges that the plain language of Claim 1 supports his interpretation that H incorporates the height of a trailer where drag reduction is optimized rather the actual height of a trailer. In opposition, Defendants maintain that the prosecution history of Claim 1 shows that H refers to the height of an *actual* trailer. Defendants point out that Plaintiff's original and second applications that were rejected do not refer to "optimize." Defendants emphasize that only upon his third application did claim 20, now Claim 1, incorporate the "optimizing" language. Defendants maintain that the absence of the "optimizing" language from the initial two applications evidences an intent that H incorporated the actual height of a trailer.

The language of the claim itself is of the utmost importance in interpreting a claim. See *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1248 (Fed.Cir. 1998). The language of Claim 1 succinctly states that "H represents the vertical distance from the roof of the cab portion to the top of the front wall of a van portion for which the drag reduction performance of said fairing is optimized." (Exhibit 3, Pl.'s Mot. Claim Interpretation.) Applying ordinary rules of grammar, it would appear that the provision "for which the drag reduction performance of said fairing is optimized" describes the item immediately preceding it, "van portion." Thus, the Court finds that the language of the claim imports a meaning that the relevant van portion to be used in calculating H is one that produces optimum drag reduction. Defendants seek to insert the word "actual" into the claim and erase the descriptive terms "for which the drag reduction performance of said fairing is optimized." Defendants propose to limit the scope of the claim to the use of actual trailer heights in determining H based upon the absence of the critical phrase from Plaintiff's prior rejected patent applications. "[C]laim terms cannot be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources." *Johnson Worldwide Associates, Inc. v. Zebco Corp.,* 175 F.3d 985, 989 (Fed.Cir. 1999). The Court holds that the plain language of the present claim that was approved indicates a clear intention to employ a van portion that would achieve "optimized" drag reduction and makes no reference to the heights of *actual* trailers. Thus, the Court declines to adopt Defendant's proposed limitation. Instead, the Court finds that Plaintiff's proposed interpretation squares with the plain language of the claim.

Furthermore, the extrinsic evidence supports the interpretation that Claim 1 is not limited to the use of actual trailer heights. First, the inventor's testimony prior to the initiation of this litigation is consistent with his current interpretation. Second, Defendants have previously stated that " '[a] fairings of deflector is normally sold to truck dealers or owners by Defendants without any knowledge as to what height trailer the truck may pull. The truck could very well pull trailers having heights between 12'0" and 13'6".' " *Buckley*, 977 F.Supp. at 382 (quoting Defs. Memo. pp. 4–5). Thus, Defendants acknowledge that, even if the alleged fairings were designed for 13'6" trailers, the actual likely use of such fairings in the market would be for trailers having heights ranging between 12'0" and 13'6" as proposed by Plaintiff. Third, when asked about the Buckley patent, Defendant's own engineer, William Jensen, stated "if I had to design a fairing by this patent, I'd be at a loss ... [b]ecause it deals with optimized values rather than real values." (Ex. 9 Dep. Jensen. at 120, l. 11–14.)

### B. *The Appropriate Formula for Determining Infringement*

■ Plaintiff supports an interpretation that H for an existing fairing designed for attachment to a particular cab can be calculated using the equation $H = h + (x/2)\tan\sigma$. Apparently, Plaintiff advances that the formula will determine whether an existing fairing infringes upon the Buckley patent. Apparently, using the height of an existing fairing (h), the angle of inclination of said fairing's top wall near its trailing edge (s), and a specified gap distance between the back of the fairing to the front wall of the van (x), the formula will produce the vertical distance between the roof of the truck and the top of a hypothetical trailer (H). If the height of the existing fairing (h) is between "about 0.9H and H," the fairing is covered by the Buckley patent.

Plaintiff contends that the plain language of the claim incorporates the formula because $H = h + (x/2)\tan s$ is simply a rearrangement of the formula $\tan^{-1}[2(H-h)/x]$ which is explicitly in the claim. Plaintiff also relies on the prior admissions of Defendants in the *Pulse* case. In opposition, Defendants counter that the advanced formula is not in the claim. Defendants also argue that the formula is unnecessary to establish H because the actual trailer height for which the accused fairing is designed should be employed in determining H.

Plaintiff demonstrates that the proposed equation is the mathematical equivalent of that actually specified in the claim. The rearrangement of values to solve for H is comparable to viewing $5 + \times = 6$ as $\times = 6-5$ or $5 = 6-\times$. The variables do not change only their placement in the equation. Given that Plaintiff's explanation appears consistent with algebraic equation manipulations, the Court concludes that the formula is an appropriate means for solving for H.

### C. *Appropriate Gap Distance (x)*

■ Plaintiff also maintains that the appropriate gap distance (x) in formula should equal thirty (30). Plaintiff supports the assignment of this value with the prior admissions from the *Pulse* case and that the current course of trade has narrowed the actual gaps used to 30. In opposition, Defendants state that plaintiff has no evidence to support 30 as the appropriate value for gap distance. Instead, the patent drawings in the specifications show $\times$ ranging in value from 30 –90.

The preamble to Claim 1 indicates that an important feature of the device is that it provides optimum drag reduction on tractor-trailers independent of the gap distances. (Ex. 3 col. 5.) Thus, it would appear that the full range of gap distances (30—90) were considered in the operation of the invention. Still, at this point, the Court believes that assigning actual values to be inserted into the formula would be premature. The Court finds that there are factual issues to be resolved before determining the appropriate distance in-

tended to be used when designing fairings under the Buckley Patent. Thus, the Court denies Plaintiff's Motion in this respect.

### D. Construction of "H Has a Value Which Is Greater than or Equal to about 0.9h and less than or Equal to about H."

██ Plaintiff seeks interpretation of the language "h has a value which is greater than or equal to about 0.9H and less than or equal to about H." Plaintiff argues that "about" 0.9H includes 0.887H in the range of fairings infringing on Plaintiff's patent when H references the trailer height for optimized drag reduction as solved for in H = h + (x/2)tans. Plaintiff relies upon Defendant's recognition and acceptance of this interpretation in the modification report submitted in the *Pulse* case. (Ex. 6). As explained in Plaintiff's testimony, the report indicated that when h/H is above 0.886, the fairing is covered by Buckley patent.

In opposition, Defendants advance a strict construction of "about 0.9H" to mean exactly 0.9H. Thus, according to Defendants' construction, fairings with a height ratio falling below 0.9H are not covered by the Buckley Patent. Defendants argue that, in the prosecution history, Plaintiff's counsel, on two occasions, distinguished the Buckley device from another patent by stating the Buckley device achieves drag reduction when h/H is "*between* 0.9.H and H." Defendants argue that these repeated omissions of "about" in defending the patent to obtain approval precludes Plaintiff from now asserting a broader interpretation. In response, Plaintiff alleges that Defendants mischaracterize the prior counsel's statements. Plaintiff argues that the cited portions of the prosecution history referred to general questions about the differences between two prior art inventions and the Buckley device.

"A technical term used in a patent document is interpreted as having the meaning that it would be given by persons experienced in the field of the invention, unless it is apparent from the patent and the prose-

cution history that the inventor used the term with a different meaning." *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1578 ( Fed.Cir.1996). "[A] court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms." *Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed.Cir.1999). "[A] party wishing to use statements in the written description to confine or otherwise affect a patent's scope must, at the very least, point to a term or terms *in the claim* with which to draw in those statements." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed.Cir.1998) (emphasis added).

On its face, the phrase "about 0.9H" favors a construction of approximation or an estimate. However, standing alone, the phrase does not specify the ultimate range of approximate values intended to be covered by the Buckley patent. Thus, a review of the specifications and procedural history are necessary to divulge a clearer meaning. The embodiment makes numerous references that h should be "substantially equal" to H to achieve the optimum effects of the Buckley patent. (Ex.3 col 5. lines 40–45.; col 7. l. 5–10.) Further, it identifies as a specific advantage of the design is that h in its lowest position can be less than 0.9H. These references discount Defendants' strict interpretation that "about 0.9H" means "between 0.9H." In explaining the range of the device's effectiveness where h does not equal H, the embodiment states that a height ratio of $0.8H_H$ would yield a greater than 75% effectiveness for achieving drag reduction. This indicates the lowest contemplated height ratio for a fairing designed under the Buckley patent would be 0.8H where H is the vertical distance to the highest trailer. While the prosecution history appears to subscribe to a narrow interpretation, "[i]t is well established that the prosecution history 'cannot enlarge, diminish, or vary the limitations in the claims' " *Buck-*

*ley v. Airshield Corp.,* 977 F.Supp. 375, 381 (D.Md.1997). The plain language of the term "about" considered in conjunction with the descriptions in the embodiment establish that "about 0.9H" does not mean at a minimum 0.9H.

Nonetheless, the intrinsic evidence is unavailing in setting an actual minimum for "about 0.9H." Thus, the extrinsic evidence should be consulted. Plaintiff relies heavily upon his own interpretation and the previous admissions of the Defendants in the *Pulse* case. Likewise, Defendants point to Plaintiff's testimony in the *Pulse* case distinguishing his invention from prior art by referring to the "0.9 or greater" height ratio. Plaintiff submitted an expert report from Gino Sovran which supports Plaintiff's interpretation based upon the language of the claim and its specifications. Defendants submitted an expert report from William Mason supporting Defendants' limitation based upon the prosecution history. However, the deposition testimony of William Jensen states that, in evaluating whether its fairings infringed the Buckley patent, Defendants selected 0.886 as the safety factor for showing noninfringement. (Ex. 9. Jensen. Dep. p.121 lines 8–13.) This evidence considered in light of Defendant's prior admissions support a conclusion that "about 0.9" reached "0.887."

VI. *Plaintiff's Motion for Partial Summary Judgment on 28 of the 30 Fairings; Defendant's Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Spectra Corp. v. Lutz,* 839 F.2d 1579 (Fed.Cir.1988) (applying summary judgment procedures to a patent case). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as

a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

More specific to the case at hand, the plaintiff, asserting a patent infringement claim, bears the burden of proving infringement by a preponderance of the evidence. *See Specialty Mfg. v. School Bus Parts of Canada,* 802 F.Supp. 1378, 1384 (W.D.N.C.1992), *aff'd* 6 F.3d 786, 1993 WL 339723 (4th Cir.1993). To meet his burden, Plaintiff must establish that Defendants acted outside the scope of the previous license by continuing to produce and market fairings covered by the Buckley patent after termination of the license.

A. *Defendant's Interrogatory Answers as Admissions against a Party Opponent*

First, Plaintiff contends that Defendants have already admitted, through answers to interrogatories in the *Pulse* case, that the thirty (30) accused fairings were covered by the Buckley patent. In its opposition, Defendants do not dispute the previous admission that thirty (30) of its fairings were covered by the Buckley patent. Instead, Defendants contend that an admission that a device is *covered* by a patent does not necessitate a finding that the device *infringes* upon said patent. However, this position does not comport with the clear language of court precedent. *See*

*Smith Intern., Inc. v. Hughes Tool Co.,* 718 F.2d 1573, (Fed.Cir.1983) ("[A]n admission of 'claim coverage' is an admission of literal infringement."); *Phillips Petroleum Co. v. U.S. Steel Corp.,* 673 F.Supp. 1278, 1345 (D.Del.1987) (admission that products are "literally embraced" by the claim established infringement).

Additionally, a party opponent's answers to interrogatories are admissible as admissions. *See Gridiron Steel Co. v. Jones & Laughlin Steel Corp.,* 361 F.2d 791, 794 (6th Cir.1966). Such admissions qualify as substantive evidence of the fact stated therein. Fed.R.Evid. 801(d)(2). Further, Rule 56(c) expressly provides that the court may consider answers to interrogatories and admission on file in reviewing a summary judgment motion. Fed.R.Civ.P. 56(c). Accordingly, the prior answer to the interrogatory may be used against Defendants as an admission of a party-opponent. *Cf. Trull v. Volkswagen of America,*187 F.3d 88, 99 (1st Cir.1999) (affirming the district court's admission of evidence propounded by a party in prior litigation that was contradictory to a factual position taken in subsequent case by the same party).

▮ Even though at the time of the *Pulse* litigation it was to Defendant's advantage to identify the fairings as falling within its licensing agreement, whether the statement was against the party's interest when made is not determinative of its admissibility. Rather, the statement need only be contrary to the party's current position for whom it is presented against. *See* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 801.30[1][a] (Joseph M. McLaughlin, ed., 2d ed.2000). In its answers to the interrogatory, Defendants expressly identified the thirty (30) fairings in question as covered by the Buckley patent at that time. The prior answer of Defendants that the 30 fairings were covered by the Buckley Patent is contrary to its current position that the allegedly same 30 fairings do not fall within the specifications of the same patent. Defendants do not now dispute the veracity of its former statement or profer an explanation limiting its factual application to the current case. Thus, the Court holds that the prior answer may properly be treated as an admission by Defendants that the 30 fairings, as designed at the time of the *Pulse* case, were covered by the Buckley Patent.

**B. *Patent Modification Project***

Generally, "[a] licensee acting within the scope of his license is not guilty of infringing the patent, but if the licensee fails to keep within the terms of the license he may become an infringer ..." Ernest B. Lipscomb III, *Lipscomb's Walker on Patents* § 2027 (3d ed. 1987 & 1997 Supp.). Nonetheless, "[p]laintiff cannot merely rely on the fact that Defendant admitted that the fairings *were* covered by the claims of the patent when they had the license to sell the fairings to prove that Defendants continued to sell *those* fairings *after* the license was terminated." Nov. 13, 1998, Mem. Op. at 10 (emphasis added). Plaintiff alleges that the deposition of William L. Jensen, Jr., an Airshield engineer, and internal documents of Defendants prove conclusively that 28 of the 30 accused fairings were not substantially modified since the *Pulse* case. Relying on this evidence, Plaintiff maintains that Defendants continued to sell the substantially same models after termination of the license and, therefore, infringed his patent.

In his deposition, Mr. Jensen stated that a list of approximately 40 fairings produced by Defendants was generated. The list consisted of all fairings sold by Defendants in the 1991–1992 time period. As part of the Patent Modification Project, the fairings were reviewed to determine whether the height of the fairings (h) exceeded 0.886H. Mr. Jensen stated that 0.886H was selected as a "safety factor" for determining whether a particular fairing fell within the Buckley patent. (Jensen Dep. p 121 lines 8–13.) According to Mr. Jensen's testimony, of the list of 40, only six were determined to have a height

ratio exceeding 0.886H. Of the six that were modified, two fairings (RA030 and RA106) were among the fairings previously admitted to be covered by the Buckley Patent. (*See* Ex. 11, Internal Memorandum Patent Mods Project, Bates Number 6006230.) According to Mr. Jensen's deposition, the remaining fairings were not subject to subsequent modification under the Patent Modification Project or thereafter. Thus, by process of elimination, Plaintiff maintains that the other 28 fairings previously admitted to be covered by the Buckley Patent are among the unmodified fairings. Plaintiff alleges that the continued sale of these 28 unmodified fairings after termination of the license infringed his patent.

■ The Court finds that Plaintiff has introduced sufficient evidence to support a finding that Defendants continued to sell 28 fairings covered by the Buckley patent after termination of its license. First, Defendants admitted that the 28 fairings in question were covered by the Buckley patent in 1990. The deposition testimony of Mr. Jensen in conjuction with Defendant's internal memorandum shows that the 28 fairings were not modified from the Patent Modification Project in 1991 through 1997 (the date of Mr. Jensen's deposition). The Fairings Sales summary sheet produced from Defendants shows that the 28 fairings were sold from 1991 through 1998. (Ex. 12, Fairing Sales.) Thus, as to these 28 fairings, the Court determines that Plaintiff has met his burden of showing that Defendants literally infringed upon the Buckley patent by selling the covered fairings outside the scope of the patent. As a result, the burden of production shifts to Defendants to show a genuine factual dispute exists as to whether the 28 fairings fell within the Buckley patent and were sold outside the license. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2729.1 (3d.1998).

Once the burden has shifted, the evidentiary standard under Rule 56 rises to require the nonmoving party to "set forth specific facts showing there is a genuine issue for trial" by affidavit, depositions, answers to interrogatories, admissions, or other evidence that would be admissible at trial. Fed.R.Civ.P. 56(c), (56)(e). The nonmovant's evidence must show that the nonmoving party has access to admissible evidence for presentation at trial. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the nonmoving party must do more than merely raise some doubt as to the existence of a fact, the moving party ultimately bears the burden of demonstrating the absence of all genuine issues of material fact. Since Plaintiff has the burden of proof on the infringement claim, he must show that the undisputed facts establish every element of the infringement claim. *See Meyers v. Brooks Shoe Inc.,* 912 F.2d 1459 (Fed.Cir. 1990).

### C. *Judicial Estoppel*

Defendants' opposing memorandum fails to address whether its answer to Interrogatory No. 18 in the *Pulse* litigation may be offered against it in the current litigation as an admission. Instead, in opposing Plaintiff's motion for summary judgment, Defendants primarily argue that the doctrine of judicial estoppel should not bind it from now asserting a position inconsistent with the admission of coverage in the *Pulse* case. In his reply, Plaintiff counters that the doctrine of judicial estoppel does not affect the use of the interrogatory answer as an admission against a party-opponent.

■ The doctrine of judicial estoppel precludes a party from asserting a position inconsistent with a position successfully taken by the same party in prior litigation. *See* Irwin M. Aisenberg, *Mod. Pat. L. Precedent* (3d ed.1997). "Acting on the assumption that there is only one truth about a given set of circumstances, the courts apply judicial estoppel to prevent a party from benefitting itself by maintaining mutually inconsistent positions regarding a particular situation." *King v. Herbert J. Thomas Memorial Hosp.*, 159 F.3d 192, 196 (4th Cir.1998). As a procedural matter, application of judicial estoppel is governed by the law of the circuit of the originating trial court. *See Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355 (Fed.Cir.1992) (applying First Circuit law); *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 665 n. 4 (Fed.Cir.1988) (applying Seventh Circuit law). In the Fourth Circuit, the doctrine applies where "(1) the party to be estopped asserts a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage." *King*, 159 F.3d at 196; *accord Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219 (4th Cir.1998); *Pittston Co. v. U.S.*, 199 F.3d 694, 701 (4th Cir.1999) ("Judicial estoppel applies only to the making of inconsistent statements of fact...."). Judicial estoppel does not require that the inconsistent position be actually litigated in prior proceeding or a showing of detrimental reliance by the party asserting its protections. *Lowery v. Stovall*, 92 F.3d 219, 223 n. 3 (4th Cir.1996). As an equitable doctrine, judicial estoppel is subject to the discretion of the district court and involves a fact specific inquiry. *King*, 159 F.3d at 196.

Defendants do not expressly contest the inconsistency in position. As gathered from Defendants' motion for summary judgment, Defendants argue that the 28 fairings in question never actually fell within Claim 1 of the Buckley patent because their height ratio is less than 0.886H, as calculated employing their interpretation of Claim 1. Thus, Defendants' prior answer to the interrogatory stating that the same fairings were covered by the Buckley patent is clearly an inconsistent factual position to its current stance.

As to the issue of judicial acceptance, the Fourth Circuit has indicated that "judicial estoppel does not apply to the settlement of an ordinary civil suit because 'there is no *judicial acceptance* of anyone's position." *Lowery*, 92 F.3d at 225 (quoting *Reynolds v. Commissioner*, 861 F.2d 469, 473). The *Pulse* case in which Defendants answered that the 28 fairings were covered by the Buckley patent was ultimately settled. Thus, there was no judicial acceptance of Defendants' answer. Additionally, there is no evidence supporting a showing of an intent to mislead the court. Accordingly, the Court finds that doctrine of judicial estoppel does not apply.

Nonetheless, there are differences between application of judicial estoppel and the rules of evidence. *See National Utility Service, Inc. v. Chesapeake Corp.*, 45 F.Supp.2d 438, 444–45 (D.N.J.1999). In *National Utility*, the plaintiff, in its answers to interrogatories, identified one state as the appropriate forum governing a breach of contract action. In a subsequent motion, the plaintiff asserted that another state's law should govern. 45 F.Supp.2d. at 445. The court found that, even though the plaintiff was not judicially estopped from asserting the contrary position, "its interrogatory responses [were] admissions." *Id.* A similar issue presents itself in the current litigation. Although the absence of intentional deception by Defendants may preclude application of judicial estoppel, the Court holds Defendants' previous responses to interrogatories are nevertheless admissions. *See Keller v. United States*, 58 F.3d 1194, 1198–1199 (7th Cir. 1995).

Still, Defendants' motion for summary judgment raises a factual dispute as to whether the fairings do fall within Claim 1 of the Buckley patent. Defendants rely upon the expert testimony of William Mason and a summary sheet of the Patent Modification Project to establish that the accused fairings do not infringe upon the Buckley patent. Using Defendants' interpretation of Claim 1 (where H employs the actual height of the trailer and the term "about 0.9" is construed to mean "0.9" alone), the height ratio of every accused fairings is below 0.886H.[2]

Depending upon the interpretation of Claim 1 and the assignment of values to different variables, it is unclear whether Plaintiff could establish literal infringement if his exact interpretation is not adopted as the Court does not. Defendant's analysis suffers from the same impediment. Although the interpretation of claims is a question of law, when it is necessary to resolve disputed issues of fact in the course of interpreting the claims, summary disposition is improper. *The Laitram Corp. v. NEC Corp.*, 952 F.2d 1357 (Fed.Cir.1991). Equally important, Plaintiff's Motion for Partial Summary Judgment relies primarily on Defendants' admission to establish literal infringement. However, Defendants' admission is not conclusive on the issue of liability. *See* 30B Michael H. Graham, *Federal Practice and Procedure*, § 7026 at 271 (Interim ed. 2000) ("Ordinary evidentiary admissions ... may be controverted or explained by the party."). Defendants have produced sufficient evidence rebutting the fact of literal infringement. Viewing the evidence in a light most favorable to each non-movant, and drawing all reasonable inferences in each non-movant's favor, the Court rules that neither party, on its own motion, has produced sufficient evidence demonstrating an entitlement to summary judgment on the issue of literal infringement. Accordingly, the Court denies Plaintiff's Motion for Partial Summary

Judgment as to the 28 accused fairings. Likewise, the Court denies Defendant's Motion for Summary Judgment of Non–Infringement.

### *CONCLUSION*

In summary, for the reasons stated above, the Court will deny Defendant's Motion to Exclude the Testimony of Dr. Gino Sorvan, deny Plaintiff's Motion to limit the Testimony of William T. Mason, Jr., grant-in-part and deny-in-part Plaintiff's Motion to exclude the Testimony of Thomas F. Smegal, Jr. as an Expert Witness, deny Defendants' Motion to Strike Plaintiff's Exhibits 1, 4, 5, 6, 7, and 10, deny Defendant's Motion for Summary Judgment of Non–Infringement, grant in part and deny in part Plaintiff's Motion for Claim Interpretation, and deny Plaintiff's Motion for Partial Summary Judgment as to the 28 accused fairings. An Order consistent with this Opinion will follow.

---

2. However, the model numbers in Ex. 5 entitled Patent Modification Project, Defendant's

Motion for Summary Judgment do not match the model numbers of the admitted fairings.