## TIME LOAN SERVICE, INC. *v.* BUKOWITZ, T/A ACE CURRENCY EXCHANGE

[No. 61, October Term, 1953.]

*Decided January 12, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Albert L. Sklar,* with whom was *Henry R. Wolfe* on the brief, for appellant.

*Ellis Peregoff,* with whom was *Gilbert I. Friedel* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for $7,790, the face amount of four checks dated February 20 and 21, 1953, drawn on the Fidelity Trust Company by Time Loan Service, Inc., payable to the order of Towson Auto Sales, and endorsed by "Towson Auto Sales, James H. Marvel, Prop." Bukowitz, who conducted a check cashing service, cashed them for Marvel for a small consideration. He testified that he had previously cashed checks for Marvel drawn by the appellant to Towson Auto Sales and endorsed in the same way; and that they were duly paid. Between October, 1952, and February 21, 1953, he had cashed some 60 of these checks, aggregating about $90,000. On the occasion of his first dealing with Marvel he called the drawer, Time Loan Service, Inc. and talked to a Mr. Kirson, who told him "Marvel is the man who can cash them." Kirson's version of this conversation was that Bukowitz simply asked him if he knew "James Marvel connected with Towson Auto Sales" and did business with him, to which he replied that he did. Bukowitz testified he never knew that Marvel had a partner. Kirson testified he knew that Marvel had a partner, one Gabrielson, but he did not testify that he so informed Bukowitz, or, in fact, that he ever saw Gabrielson. All of his business dealings were with Marvel. The appellant offered in evidence a trader's license issued to Towson Auto Sales, showing it to be a partnership conducted by Marvel and Gabrielson. Marvel had signed the application for this license.

The checks in question were duly presented for payment, two legal holidays intervening. They were not paid because payment was stopped by the drawer on February 25. It was admitted that at the time it issued the checks, Marvel had produced chattel mortgages securing repayment of the moneys advanced, either executed by Marvel or his customers. This was in the regular course of business whereby Time Loan Service, Inc. was financing Towson Auto Sales in the sale of automobiles. It was apparently not until February 25 that the drawer

discovered that Marvel had defrauded the company of a large sum of money, for on that date it lodged a complaint with the police that Marvel had given them certain bad checks and had removed from the State without authority certain "mortgages to property".

The appellant contended in the court below, although the point seems to be abandoned here, that Bukowitz was not a holder in due course because he should have known that he was dealing with a partnership. Even if he had known that Marvel had a partner, he would not be charged with notice of the fraudulent conduct of Marvel toward the drawer, in regard to other transactions. Cf. Section 72 and 76, Article 13, Code of 1951, and *Lebrun v. Prosise,* 197 Md. 466, 476. It is not contended that Marvel lacked authority as a partner to endorse the checks. See Section 9, Article 73A of the 1951 Code; *Bradford v. Harford Bank,* 148 Md. 1, 23. It is generally held that an instrument executed by an agent in the principal's name alone is sufficient. See Note 96 A. L. R. 1251.

The main contention of the appellant seems to be that the appellee is not a holder, but a mere transferee taking only such title as the transferor had because he did not acquire the check by negotiation. See Sections 50 and 69, Article 13, Code of 1951. It is argued that the endorsement was defective and that a defective endorsement is in legal effect the same as no endorsement at all. We think, however, that the endorsement was sufficient.

It is good banking practice for the payee to endorse in the identical form in which a check is drawn and the Statute recognizes that if, as often happens, the payee's name is wrongly designated or misspelled, the correct name may be written beneath. Section 63, Article 13, Code of 1951. In some cases it has been held that if the endorsement differs from the face of the check, an endorsee cannot claim as a holder in due course, at least in the absence of evidence as to the identity of the payee and endorser. *Young v. Hembree,* 73 P. 2d 393 (Okla.); *Nokomis National Bank v. Hendricks,* 205 Ill. App. 54.

In other cases, it has been held that a trivial variance is not fatal. *First Nat. Bank of Hays v. Mense,* 10 P. 2d 19 (Kan.) ; *First Nat. Bank v. McNairy,* 142 N. W. 139 (Minn.). *Cf. Jorgensen Chevrolet Co. v. First Nat. Bank of Red Wing,* 14 N. W. 2d 618 (Minn.). See also Note, 153 A. L. R. 598.

It has been held that where the payee's name is wholly omitted, an endorsee cannot claim as a holder in due course. *First Nat. Bank of Shenandoah, Iowa v. Kelgord,* 135 N. W. 548 (Neb.). These cases are not in point, for in the instant case the payee's name was correctly endorsed as written, and there is no question of identity. The only defect claimed is that Marvel, having authority to sign the payee's name as partner, incorrectly designated himself as proprietor, rather than as partner.

We have found no case directly in point, but in *Ward v. Venner,* 53 N. E. 395 (Mass.), the situation was that a note payable to the estate of one Hubbard was endorsed by three persons who were in fact the executors but incorrectly described themselves as trustees, prior to their qualification as such. Holmes, J. said: "There is no doubt that the indorsement will pass a title if one who holds a note as executor indorses it with his name, followed by the word 'executor,' or by no word at all. * * * It seems to us no less plain that his indorsement would be equally effectual if he misdescribed himself as trustee." In the instant case, we think the misdescription was not fatal.

*Judgment affirmed, with costs.*