## COPLIN, ETC. *v.* MARYLAND TRUST COMPANY

[No. 170, September Term, 1959.]

*Decided March 17, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Albert G. Aaron* for the appellant.

*Robert C. Prem,* with whom were *Theodore R. Dankmeyer*
and *Niles, Barton, Yost & Dankmeyer* on the brief, for the
appellee.

HAMMOND, J., delivered the opinion of the Court.

In this suit by a depositor against a drawee bank for paying
a check on which the indorsement of the payee was forged or
unauthorized, the trial judge found for the bank, and the de-
positor has appealed.

The case was tried and decided on a stipulation of facts
as follows: Paramount Promotions, a partnership, had a
checking account with the Maryland Trust Company, of Balti-
more, and on March 29, 1957, drew a check to the order of
"Donald Flax, Trustee" in the amount of $3,520.00. On
April 2, 1957, this check was presented to the Maryland Trust
Company for payment and the account of Paramount was
debited in the amount of $3,520.00. The check was not in-
dorsed "Donald Flax, Trustee" but was indorsed "For de-
posit to the Account of Donald Flax." It had been deposited,
on April 1, 1957, in the one account Donald Flax carried in
the Central Bank of Howard County, at Clarksville, Mary-
land, designated "Donald Flax Special." Donald Flax did
not indorse the check nor was it done with his permission or
authorization. The final stipulation was that Paramount "be-
lieved and intended Donald Flax to be a trustee for the funds."

The trial judge found nothing before him, in the stipulation,
or otherwise, indicating that Donald Flax was in fact a trustee
or that he had improperly, or in violation of any agreement with
Paramount, used the funds the Paramount check had created
in his bank account, subject to his order, in the Central Bank.
We think the findings below were warranted and judgment

properly entered for the bank for the reason that Paramount showed no loss, damage or detriment.

Code (1957), Art. 13, sec. 44, provides that where a signature on an instrument is forged or made without the authority of the person whose signature it purports to be, "it is wholly inoperative, and no right * * * to enforce payment thereof * * * can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." This Court, in *Union Trust Co. v. Soble,* 192 Md. 427, 430-431, holding the word "precluded" in the statute to be synonymous with "estopped," said: "It is an established rule that when a bank receives money on deposit, it impliedly contracts to pay the depositor's checks only to the persons to whom they are made payable or upon their genuine indorsements. * * * If the drawer is free from negligence or any conduct warranting his estoppel, the bank cannot charge to his account any check upon which the indorsement has been forged or made without authority. But if the drawer is negligent in some duty owing to the bank, or if he may be charged with conduct in consequence of which the improper payment was made, he must bear the loss." The fact that the drawee bank may rely on the guarantee of prior indorsements and can sue the presenting bank does not affect the duty, set out in *Soble,* not to pay its depositor's check on a forged or unauthorized indorsement. 8 Zollman, *Banks & Banking,* Sec. 5633 (1936).

The Courts have added qualifications, beyond those dealt with in *Soble,* to the liability of a drawee bank to the drawer of a check on which the indorsement is forged or unauthorized. In dealing with the effect of these qualifications under the stipulated facts we treat the Flax indorsement as forged or made without authority. Compare *First Denton National Bank v. Kenney,* 116 Md. 24, and *Time Loan Service, Inc. v. Bukowitz,* 203 Md. 562.

It has long been held that, despite the almost universal custom of requiring a payee to indorse a check before payment, a bank is protected if it pays without indorsement, as long as the payee actually receives the money ordered by the drawer to be paid. *Osborn v. Gheen,* 16 D. C. (5 Mackey),

189, 194, aff'd 136 U. S. 646, 34 L. Ed. 552; *Modern Equipment Corp. v. Northern Trust Co.* (Ill. App. Ct. 2nd Div.), 1 N. E. 2d 105, 107; *Glens Falls Indemnity Co. v. Palmetto Bank,* 23 F. Supp. 844, 848, aff'd 104 F. 2d 671 (C. C. A. 4th Cir.); *Gilbert v. Chase National Bank* (S. D. N. Y.), 108 F. Supp. 229, 231; *2 Paton's Digest,* p. 2070.

The rationale of these holdings underlies the many decisions that even though a drawee bank pays a check of a depositor on the forged or unauthorized indorsement of the payee named therein, if the proceeds of the check or the benefit of the proceeds are received by the payee, no recovery can be had against the bank by the drawer, for the reason that if the person entitled to receive the proceeds actually receives them or the benefit of them, the drawer has suffered no loss and the technical breach of duty by the bank has occasioned no harm. *Modern Equipment Corp. v. Northern Trust Co., supra; Commercial Credit Corp. v. Empire Trust Co.* (C. A. 8th Cir.), 260 F. 2d 132; *Gilbert v. Chase National Bank, supra; National Surety Corp. v. City Bank & Trust Co.* (Wis.), 20 N. W. 2d 559; *Florida National Bank at St. Petersburg v. Geer* (Fla.), 96 So. 2d 409, 412; *Sweeney v. National City Bank of Troy* (App. Div.), 33 N. Y. S. 2d 885, aff'd 48 N. E. 2d 711; *Lincoln Building & Loan Ass'n v. Liberty National Bank & Trust Co.* (Ky.), 227 S. W. 2d 191; *Merchants' National Bank v. Federal State Bank* (Mich.), 172 N. W. 390; *Bell v. Murchison National Bank* (N. C.), 145 S. E. 241; *Weiler v. Marine National Bank* (Pa.), 131 A. 495; *Federal Land Bank v. Omaha National Bank* (Neb.), 225 N. W. 471; *Andrews v. Northwestern National Bank* (Minn.), 117 N. W. 621, aff'd on rehearing 122 N. W. 499. See also 6 Zollman, *Banks & Banking,* Sec. 4295; 9 C.J.S. *Banks & Banking,* Sec. 356c.

Typical examples of the factual situations found in the group of cases last cited are revealed by the opinions in the first three. In the *Modern Equipment Corp.* case, Gordon, as president of the corporation, drew checks to his own order but did not indorse them, turning them over to his wife, who indorsed them with her name or her husband's name and deposited them in a joint account she and her husband main-

tained. The court excluded as immaterial evidence of Gordon's fraudulent conduct in relation to the corporation, holding that he had authority to draw the checks and that the fact that the money was deposited in the payee's account was "conclusive of the only issue in the case" because "[w]hatever loss, if any, plaintiff [the corporation] may have suffered through the conduct of Gordon, no act of defendant [drawee bank] has been shown to have contributed thereto." (1 N. E. 2d at 108.)

In the *Commercial Credit Corp.* case, an automobile dealer who received a $12,000 check from Commercial Credit on the strength of a loan agreement and a note, on both of which he had forged his wife's name, also forged her name to the check, the proceeds of which went into the account of the automobile agency, which subsequently failed. The court refused to hold liable the drawee bank which had paid Commercial Credit's check on the forged indorsement, saying: "Inasmuch as the proceeds of the check went to and were received by Howard A. Beach, the only person entitled thereto, it follows that plaintiff suffered no loss by reason of the forged endorsement * * *." (260 F. 2d at 135.)

In the *Gilbert* case a $50,000 check named the Snowden Oil and Gas Company, Ltd., a partnership, as payee. A member of an investment banking firm and one of the limited partners of Snowden signed only their own names on the back of the check—not Snowden's name—and delivered it to the First National Bank of Boston, which caused to be stamped on the back, "Wired to Fredonia" and "Credited Account of Within Named Absence of Endorsement Guaranteed by First National Bank of Boston." The Court, in a suit by the drawer against the drawee bank, on a claim of fraud by Snowden, Ltd., in misapplying the proceeds of the check, found as a fact that the proceeds of the check went into Snowden's bank account in the Fredonia Valley Bank in Texas. The opinion said that since the payee actually received the funds, the drawee bank had done exactly what it had been instructed to do, and "[t]he drawer cannot now complain because his bank followed his instructions. This view is reinforced by a line of decisions holding that where the drawee bank pays out

funds on the basis of a forged endorsement, but those funds were then later turned over to the named payee, the drawee bank suffers no liability." (108 F. Supp. at 233.)

In the present case Paramount intended Donald Flax to get $3,520.00. Although it believed him to be a trustee, it was not stipulated that he was, and if it be assumed that he was a trustee there is no indication in the record that he was not faithful to his trust or that he did anything to the detriment of Paramount. The inference, slight though it may be, from the designation of the Flax bank account as "Special" would be that he treated funds in that account as apart from his own. It is stipulated that the individual to whom Paramount ordered payment by the Maryland Trust Company received the money ordered to be paid in a bank account where it was subject to his order, whether he was a trustee, Code (1957), Art. 37A, sec. 9 (Uniform Fiduciaries Act), or acting in his individual capacity.

It may be that after the proceeds of the check were credited to the account of Flax they were—in some manner as to which there can be only speculation—diverted or misapplied, and that Paramount's argument for relief is that if the check had not been paid by the Maryland Trust Company it would not have reached the payee, and have been subject to diversion or misapplication. The same argument was made and rejected in most of the cases cited above, the opinions pointing out that the real cause of the loss to the drawer was not the paying of the check but, rather, what was done with the proceeds after it was paid, something for which the drawee bank should not be held responsible.

The case must be decided on the stipulated facts, there being no others before us. Those facts show that the proceeds of the check reached Flax and do not show loss or damage to Paramount occasioned by the Maryland Trust Company, and we regard the authorities we have cited as controlling.

*Judgment affirmed, with costs.*