2010 OK CIV APP 35

ACES A/C SUPPLY NORTH, a Texas Corporation, Plaintiff/Appellant,

v.

SECURITY BANK, an Oklahoma Banking Corporation, Defendant/Appellee,

and

Terrell Heating & Air Conditioning, Inc., an Oklahoma Corporation, and Brent Terrell, Defendants.

No. 107,346.

Court of Civil Appeals of Oklahoma, Division No. 4.

Jan. 13, 2010.

Joe M. Fears, Richard D. White, Jr., Barber & Bartz, Tulsa, OK, for Plaintiff/Appellant.

Barry G. Reynolds, Kelley G. Loud, Titus Hillis Reynolds Love, Dickman & McCalmon, Tulsa, OK, for Defendant/Appellee.

KEITH RAPP, Judge.

¶ 1 The trial court plaintiff, Aces A/C Supply North (Aces), appeals an order granting summary judgment to the defendant, Security Bank (Security). The trial court entered an order pursuant to 12 O.S.2001, § 994. This appeal proceeds under the accelerated appeal provisions of Okla. Sup. Ct. R. 1.36, 12 O.S. Supp.2009, ch. 15, app.

## BACKGROUND

¶ 2 The defendant, Terrell Heating & Air Conditioning, Inc. (THAC), is owned and operated by the defendant, Brent Terrell (Terrell). THAC is an air conditioning subcontractor. THAC purchased supplies and equipment from Aces on account.

¶ 3 THAC had a subcontract for a project (Gemstar Project) where Gemstar Construction and Development, Inc. (Gemstar) served as the project construction manager. THAC purchased from Aces the supplies and equipment for the Gemstar Project. THAC had other projects and an account balance with Aces for purchases unrelated to the Gemstar Project.

¶ 4 In order to be paid, THAC had to submit to Gemstar documented applications for payment. In addition, Aces and THAC had an agreement whereby such payments would be made by joint checks, payable to Aces and THAC.[1]

¶ 5 This case involves three of those joint payments. THAC submitted three payment applications: one for $92,753.25, one for $79,478.15, and one for $33,445.44. Gemstar made these three payments, totaling $334,454.44, between April 5, 2007 and May 25, 2007, by check jointly payable to THAC and Aces.

¶ 6 These payments exceeded the total of the underlying invoices from Aces included in the payment application document. Thus, Terrell and his bookkeeper discussed depositing the first check into THAC's operating account at Security and using the excess funds for another obligation.

¶ 7 The three Gemstar payments were deposited into THAC's operating account at Security and without an authorized endorsement by Aces.[2] Security credited the account and forwarded the checks to Gemstar's bank,

1. "The joint check rule reflects a widespread practice in the construction industry that allows owners and general contractors to protect themselves from lien foreclosure by materialmen whom subcontractors have failed to pay. The issuance of a check payable jointly to the subcontractor and the materialman enables the materialman to withhold endorsement until he is assured that the subcontractor's account with him is or will be satisfied from the proceeds of the check. This may be accomplished in various ways, including the use of gentlemen's agreements or more formal escrow arrangements. The practice of issuing joint checks protects both the owner/general contractor and the materialman, because each has an interest in ensuring that the materialman is paid." *Brown Wholesale Elec. Co. v. Beztak of Scottsdale, Inc.,* 163 Ariz. 340, 788 P.2d 73, 76 (1990).

2. It is undisputed that the Aces's endorsement was not an authorized signature. Seven other checks were properly endorsed and Aces received those checks. The record does not show whether any or all of those seven checks were for an amount over that which was due to Aces for the invoices covered by these payments. There is a dispute between THAC and Aces as to the balance THAC owes Aces. The summary judgment given to Security did not resolve that separate dispute, but the trial court authorized this appeal.

which paid the checks. Aces learned of these facts when Gemstar requested a lien release.

¶ 8 THAC subsequently sent checks to Aces from its operating account. These checks identified the invoices being paid, which were the invoices attributed to the Gemstar Project and were the ones included in the three Gemstar payments involved here.

¶ 9 In its summary judgment motion, Security states that from April 2007 to October 2007, THAC paid Aces at least $430,000.00 from its operating account. Security further states as a fact that "at times" THAC directed the application of payments to specific invoices as reflected on the checks. On June 15, 2007, THAC paid $59,178.10, with direction to apply the payment to a specific Gemstar Project invoice.[3] Other than the $59,178.10 payment, Security's motion for summary judgment does not itemize and correlate THAC's payments so as to compare them with the three checks in question and the Aces's invoices associated with those three payments. Security argues that the $430,000.00 paid by THAC, along with the $59,178.10 payment, covers the three checks.

¶ 10 Thus, Security maintains that Aces received all that it was due from the three checks in question. Security argues that it is exonerated from all liability to Aces for receiving and processing the three checks without an authorized endorsement because of these THAC payments.

¶ 11 Aces does not dispute that THAC paid it at least $430,000.00, or that THAC directed application in some cases. However, Aces states that not all of the $430,000.00 paid involved the Gemstar Project because there were other projects. Aces also states that the directions were ineffective for two reasons.[4]

¶ 12 First, Aces asserts that its policy was to apply all payments to the oldest balance first, irrespective of THAC's designation of payment. Aces's representative testified that this policy was communicated to THAC.[5] Second, Aces asserts that the directions were unclear or directed payment to invoices already paid or credited.

¶ 13 Next, Aces states that THAC's balance due to Aces exceeds the three Gemstar checks after credit for all of THAC's payments. Aces argues that Security is therefore liable because Aces has not been paid the money from the checks. Alternatively, Aces argues that it was damaged by Security's acceptance of the checks because, otherwise, Aces would have received the entire proceeds, thereby reducing THAC's balance owed by the amount that the three Gemstar payments exceeded the total of the specific Aces's invoices attributed to those payments.[6]

¶ 14 The trial court agreed with Security, finding that THAC's payments totally replaced the amount owed Aces from the three misdirected checks. After making extensive findings, the trial court ruled that Aces had received the amount it was due from the Gemstar checks, notwithstanding the diversion of the checks, and this fact relieved Security of liability. The trial court further found that Aces had not shown either that THAC would have paid the excess funds to its balance or that THAC's balance would have been reduced had the Gemstar checks not been diverted.

¶ 15 The trial court granted summary judgment to Security. Aces appeals.

## STANDARD OF REVIEW

¶ 16 The appellate standard of review in summary judgment is *de novo*. *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, ¶ 2, 920 P.2d 122, 124. The evidentiary materials will be examined to determine what facts are material and whether there is a substantial con-

---

3. Record, Tab 6, p. 4.

4. Record, Tab 7, p. 4.

5. The written credit terms between THAC and Aces does not include this policy. Aces did not show that this policy had been communicated to Security or Gemstar.

6. Aces did not demonstrate that it had perfected any lien on the excess proceeds or had an assignment of such excess proceeds. The joint check agreement does not reference any lien or assignment.

troversy as to one material fact. *Sperling v. Marler,* 1998 OK 81, 963 P.2d 577; *Malson v. Palmer Broadcasting Group,* 1997 OK 42, 936 P.2d 940. Summary judgment is proper only if the record reveals uncontroverted material facts failing to support any legitimate inference in favor of the nonmoving party. *N.C. Corff Partnership, Ltd. v. OXY USA, Inc.,* 1996 OK CIV APP 92, 929 P.2d 288.

■■■ ¶ 17 One who defends against a claim and who does not bear the burden of proof is not required to negate the plaintiff's claims or theories in order to prevail on motion for summary judgment. When, a defendant moves for summary judgment without relying upon an affirmative defense, the defendant must show that: 1) no substantial factual controversy exists as to at least one fact essential to plaintiff's theory of the cause of action; and, 2) the fact is in defendant's favor. Once a defendant has introduced evidentiary materials to establish these points, the plaintiff then has the burden of showing that evidence is available which justifies a trial of the issue. *Akin v. Missouri Pacific Railroad Co.,* 1998 OK 102, ¶ 8, 977 P.2d 1040, 1044; *Stephens v. Yamaha Motor Co., Ltd. Japan,* 1981 OK 42, ¶ 11, 627 P.2d 439, 441; *Runyon v. Reid,* 1973 OK 25, ¶¶ 12–13, 510 P.2d 943, 946. On the other hand, when the defendant relies upon an affirmative defense then the defendant, as the party with the burden of proof, must meet the same standards as a plaintiff movant. *Akin,* 1998 OK 102 at ¶ 9, 977 P.2d at 1044.

## ANALYSIS AND REVIEW

■■ ¶ 18 A bank avoids liability for honoring a check with an unauthorized endorsement if the bank can prove that the intended payee received the proceeds of the check. *O'Petro Energy Corp. v. Canadian St. Bank,* 1992 OK 126, ¶ 21, 837 P.2d 1391, 1395; *Clemens v. First Nat'l Bank of Berryville,* 286 Ark. 290, 692 S.W.2d 222, 225 (1985); *Coplin*

*v. Maryland Trust Co.,* 222 Md. 119, 159 A.2d 356, 357–58 (1960); *Stella v. Dean Witter Reynolds, Inc.,* 241 N.J.Super. 55, 574 A.2d 468, 475 (N.J.Super.Ct.App.Div.1990); *see American Liberty Ins. Co. v. AmSouth Bank,* 825 So.2d 786, 797 (Ala.2002) (Lyons, J., concurring); *Hays v. Friendly Nat'l Bank,* 1979 OK CIV APP 9, 591 P.2d 1274 (no liability for honoring non-indorsed instrument absent harm.) [7]

■ ¶ 19 Here, it is undisputed that THAC paid, through directed payments, sums equal to or in excess of the Aces's invoices attributed to the three Gemstar checks. Security's summary judgment singles out the element of damages and submits evidentiary materials to show that Aces cannot prove damages because it received its money. The burden then shifted to Aces to show that a question of fact exists and it failed to meet that burden on this point. Thus, the trial court correctly entered summary judgment.

¶ 20 Also, the trial court correctly awarded summary judgment against Aces's claim of damages premised upon a reduction of THAC's balance had the three checks been paid over. As the trial court observed, Aces has not demonstrated the fact of a reduction of the account balance. For summary judgment purposes, the fact that the total of the three Gemstar checks might exceed the Aces's associated invoices may be inferred from THAC's motivation for diverting the checks.[8]

¶ 21 However, this does not suffice because Aces has not demonstrated any right to receive the excess proceeds. Although there is a rebuttable presumption that the measure of liability is the amount of the checks, Aces's recovery may not exceed the amount of its interest in the checks. 12A O.S.2001, § 3–420(b); *Saxon Mortgage Services v. Harrison,* 186 Md.App. 228, 973 A.2d 841 (2009); *Stapleton v. First Sec. Bank,* 207 Mont. 248, 675 P.2d 83 (1983); *see* Uniform Commercial

---

**7.** The trial court cited additional authorities. This Court perceives no legal distinction between the facts where, as here, the issue is between a payee and an intermediate bank versus the issue being between the drawer and its bank. When the intended payee receives the money it is due, albeit from another source, there is no damage or harm attributed to honoring the instrument without an authorized endorsement.

**8.** Terrell and his bookkeeper discussed using the excess to pay other obligations.

Code Comment (1), 12A O.S.2001, § 3–420. All that Aces has shown is that it had a legal interest, or right, in the three checks to the extent that they covered applicable Aces's invoices for which sums have been remitted.

¶ 22 Therefore, the judgment of the trial court granting summary judgment to Security National Bank is affirmed.

¶ 23 AFFIRMED.

GABBARD, P.J., WISEMAN, V.C.J. (sitting by designation), concur.